UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GERALD THOMAS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:06-CV-152-C |
| § | ECF |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## **REPORT AND RECOMMENDATION**

Plaintiff Gerald Thomas seeks judicial review of a decision of Jo Anne Barnhart, the Commissioner of Social Security,[1] regarding his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court has reviewed the administrative record and the arguments of the parties under the substantial evidence standard, 42 U.S.C. § 405(g), and has determined that the Commissioner's decision should be reversed and remanded for further administrative proceedings.

---

[1] On January 20, 2007, Linda S. McMahon became the acting Commissioner of Social Security. However, Jo Anne Barnhart held the position at the time Thomas' applications were denied.

I.      **Statement of the Case**

After working for over twenty years in the irrigation business, Thomas claims he became disabled on February 1, 2002, following an injury to his right knee. (Tr. 12, 281-82.) The Administrative Law Judge (ALJ) issued a decision on April 28, 2005, and determined that Thomas was capable of performing sedentary work despite his limitations. (Tr. 14.) The ALJ further determined that the Medical Vocational Guidelines directed a finding that Thomas was not disabled from February 1, 2002, his alleged onset date, to May 6, 2004, but directed a finding that he became disabled on May 7, 2004, the date on which he turned fifty years old. (Tr. 15.)

Thomas brings a single argument in this appeal; he argues substantial evidence does not support the decision of the ALJ that his impairments did not meet the criteria of a listed impairment in the Commissioner's regulations.[2] He contends his knee impairment met the criteria of Listing 1.02A, the listing for major dysfunction to a major peripheral weight-bearing joint, or Listing 1.03, the listing for reconstructive surgery or surgical arthrodesis of a major weight-bearing joint.

II.     **Discussion**

Thomas injured his right knee while working on or about January 17, 2002. (Tr. 206, 244.) It was later determined that he suffered a large complex tear to the medial meniscus and suffered from effusion and osteoarthritis. (Tr. 169.) He underwent arthroscopic surgery

---

[2] Disability is conclusively presumed when the claimant's impairment equals the criteria of one of the listed impairments in the Commissioner's regulations. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000) (citation omitted)

on March 21, 2002, to remove the tear. (*Id*.; Tr. 206.)  At some point thereafter Thomas developed septic arthritis in his knee. (Tr. 171, 205-06.)  Septic arthritis is an acute inflammation of synovial membranes caused by a bacterial infection which results in effusion and leads to destruction of the cartilage around joints; the condition may become chronic and may lead to deformity and disability.  STEDMAN'S MEDICAL DICTIONARY 149, 151 (27th ed. 2000).  In Thomas' case the condition was chronic, "recalcitrant," resistent to antibiotics, and addressed with lavage[3] and debridement in September 2002, November 2002, and March 2003. (Tr. 90, 96, 144, 171, 205.)  According to one of his treating orthopedic surgeons, Mark Scioli, M.D., Thomas' condition compromised the integrity of the cartilage in his knee. (Tr. 177; *see* Tr. 206.)  Dr. Scioli noted that x-rays showed significant medial joint space narrowing, profound lipping osteophyte formation, and mild patellofemoral narrowing (Tr. 170.)  Dr. Scioli also indicated in examination notes that Thomas was required to use double crutch support at all times, (Tr. 180), and noted chronic swelling in Thomas' knee, marked antalgia, an inability to stand, squat, or walk any distance, and that Thomas' ability to ambulate had been markedly curtailed without a supportive device such as a pair of crutches (Tr. 177).  Thomas' condition did not improve; he underwent right knee replacement on January 12, 2004. (Tr. 216.)

    Listing 1.02A, the listing for major dysfunction to a major peripheral weight-bearing joint requires a showing of the following:

---

[3] Lavage is described as "washing out" with copious injections and rejections of fluids.  STEDMAN'S MEDICAL DICTIONARY at 970.

3

> [g]ross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With . . . [i[]volvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02, 1.02A (2006).

Listing 1.03 requires a showing that the claimant underwent reconstructive surgery or surgical replacement of a major weight-bearing joint and an inability to ambulate effectively and that the return to effective ambulation did not occur, or was not expected to occur, within twelve months of onset. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.03.

Thomas contends that evidence from his physicians, including the evidence from Dr. Scioli, show that he met the criteria of both listings. The Commissioner contends the medical evidence does not establish that Thomas suffered from an inability to ambulate effectively, a finding, which is required under both listings. This is incorrect. The regulations discuss "inability to ambulate effectively" as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to

4

>use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B(2)(b)(1)-(2). Dr. Scioli's examination notes indicate that Thomas suffered from an inability to ambulate effectively, as that term is defined in the regulations. (Tr. 177, 216.)

The Commissioner acknowledges Dr. Scioli indicated that Thomas' ability to ambulate was "markedly curtailed" without crutches and that he needed to stay on double crutch support at all times. She argues, however, that the ALJ properly discounted Dr. Scioli's opinions because they were inconsistent with the record as a whole. Citing *Greenspan v. Shalala*, 38 F.2d 232, 237 (5th Cir. 1994), she argues the ALJ may give less or no weight to a treating physician's opinion when good cause is shown and that Dr. Scioli's opinions were inconsistent with Thomas' statements in application documents.

The Commissioner's argument is without merit. Although the good cause exceptions in *Greenspan* allow the ALJ to give less or no weight to a treating physician's opinion, the ALJ must give reasons in his decision for the weight accorded to treating physician opinion. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)). In this case, the ALJ did not give reasons for declining to accord Dr. Scioli's opinions controlling weight. In fact, the ALJ did not acknowledge any of Dr. Scioli's opinions or any of Dr. Scioli's medical records or *any* of the medical evidence generated by Thomas' treating and examining physicians prior to May 7, 2004, the date on which the ALJ found Thomas

became disabled.  Further, in support of his step three finding, the ALJ merely stated that "no treating physician mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. 13.)  The ALJ therefore failed to address treating physician evidence, which was relevant to the time period in which the ALJ found Thomas was not disabled; failed to identify the Listings relevant to Thomas' case; failed to provide findings, discussion, and analysis at step three of his decision; and failed to identify substantial evidence to support his ultimate conclusion of non-disability.

There is medical evidence in this case indicating that Thomas may have met the criteria of a listed impairment, but the ALJ did not discuss the evidence.  The absence of such a discussion is fatal.  Although there is no legal authority requiring the ALJ to discuss each piece of evidence in his decision, he must support his decision with substantial evidence. The court is not authorized to weigh the evidence or try the questions de novo.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (*citing Newton*, 209 F.2d at 452).  Rather, the ALJ is charged with weighing the evidence and resolving conflicts in the evidence.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  The court is charged with determining whether the record, considered in its entirety, substantially supports the Commissioner's decision. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986) (citation omitted).

"The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.  In this case the ALJ did not support his decision with substantial evidence, and remand is required.

**III.   Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Thomas' case for further administrative proceedings.

**IV.   Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   January 30, 2007.

NANCY M. KOENIG
United States Magistrate Judge